# IN THE UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF TENNESSEE
## AT KNOXVILLE

| | |
|---|---|
| **BLOUNT MEMORIAL HOSPITAL, INCORPORATED,** ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | |
| **v.** ) | **Civil Action No. _____** |
| ) | |
| **BLOUNT COUNTY, TENNESSEE, and** ) | |
| **JONATHAN THOMAS SKRMETTI, in his** ) | |
| **official capacity as TENNESSEE ATTORNEY** ) | |
| **GENERAL and REPORTER,** ) | |
| ) | |
| **Defendants.** ) | |

## VERIFIED COMPLAINT FOR DECLARATORY JUDGMENT AND INJUNCTVE RELIEF – CLAIM OF UNCONSTITUTIONALITY

Plaintiff, Blount Memorial Hospital, Incorporated ("Blount Memorial" or "Plaintiff"), by and through its undersigned counsel, brings this action for declaratory judgment, requesting the Court to declare an act of the Tennessee General Assembly to be unconstitutional, and injunctive relief against Blount County, Tennessee ("County" or "Defendant") and Jonathan Thomas Skrmetti, in his official capacity as the Tennessee Attorney General and Reporter (the "Attorney General"), and shows this Court as follows:

## INTRODUCTION

This case arises out of the County's actions to claim, confiscate, and convert Blount Memorial's property, interfere with and impair Blount Memorial's contracts, and subjugate Blount Memorial to the unbridled, arbitrary, and capricious will of Blount County and its mayor. Chapter 28 of the 2023 Private Acts of the State of Tennessee (the "New Private Act"), whose enactment was requested by the County, purports to authorize the County to do all of these things without

1

providing just compensation, notice and a meaningful opportunity to be heard, or even a rational basis upon which to do so, all in contravention to the United States Constitution, the Tennessee Constitution, and the seventy-five (75) year history of documents, course of conduct, and the mutually beneficial relationship between Blount Memorial and the County. The New Private Act is unconstitutional under specific provisions of the Constitutions of the United States and the State of Tennessee as hereinafter set out.

## THE PARTIES

1.      Plaintiff Blount Memorial is a Tennessee nonprofit corporation with its principal place of business located at 907 East Lamar Alexander Parkway, Maryville, Blount County, Tennessee 37804, and, as further described below, was created over seventy-five (75) years ago with the specific intent to lease, operate and maintain a medical facility in Blount County, Tennessee, known as Blount Memorial Hospital, and to acquire, lease, and hold real estate in connection therewith.

2.      Defendant Blount County, Tennessee, is a county of the State of Tennessee with its principal office located at 359 Court Street, Maryville, Blount County, Tennessee 37804. The County may be served with process through the mayor of Blount County, Tennessee, Marvin Edward Mitchell (the "County Mayor"), at 341 Court Street, Maryville, Blount County, Tennessee 37804. As further described below, throughout most of 2022 and 2023, the County and County Mayor have made threats against the administration and Board of Directors of Blount Memorial and have attempted to interfere with and disrupt the operations of Blount Memorial, including, among other things, requesting passage of the New Private Act and negotiating with University Health Systems, Inc. ("University of Tennessee Medical Center") to take over the management and operation of Blount Memorial Hospital.

2

3.     Defendant Jonathan Thomas Skrmetti is the Attorney General and Reporter of the State of Tennessee and is named as a defendant in this action because Blount Memorial seeks a declaratory judgment that the New Private Act is unconstitutional.  *See Kelly v. Lee*, 1:18-CV-00170-DCLC, 2020 U.S. Dist. LEXIS 78369, at *8–9 (E.D. Tenn. May 4, 2020).  The Attorney General may be served with process at 500 Charlotte Avenue, Nashville, TN 37219.

## JURISDICTION AND VENUE

4.     This Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331 and 2201.

5.     This Court has supplemental jurisdiction over Blount Memorial's state law claims pursuant to 28 U.S.C. §§ 1331 and 1367.

6.     Personal jurisdiction is proper pursuant to Fed. R. Civ. P. 4 and Tenn. Code Ann. §§ 20-2-222, -223, and -225; the Court's personal jurisdiction over the Defendants also comports with the Due Process Clause of the Fourteenth Amendment to the United States Constitution.

7.     Venue is proper pursuant to 28 U.S.C. § 1391.

## FACTUAL ALLEGATIONS

### a.     The Creation and Legal Organization of Blount Memorial

8.     In 1942, community leaders and citizens in Blount County, Tennessee, began taking actions to build a hospital in Blount County.  On April 6, 1942, the Blount County Quarterly Court[1] passed a resolution creating a committee, comprised of County Judge[2] George D. Roberts, Regional Manager of the Aluminum Company of America, Inc. ("ALCOA, Inc."), A.D. Huddleston, and attorney for the County, Joe C. Gamble, to oversee the financing and construction of a hospital (the "Hospital Committee").  The County Commission authorized the Hospital

---

[1] The quarterly court then served as the legislative body of Blount County.  *See* Tenn. Code Ann. § 5-5-101(b).  The County legislative body is hereinafter referred to as the "Commission."
[2] County Judge Roberts served as the County's mayor at that time.  *See* Tenn. Code Ann. § 5-6-101(c).

3

Committee to apply for a grant of federal funds to finance the construction of a hospital. *See* 1942 Hospital Resolution attached hereto as **Exhibit 1**.

9.　　The committee sought funding for a hospital from several sources, including applying to the Federal Works Agency ("FWA") for a grant of funds. In 1941, the FWA had received an application for a grant of federal funds for the construction of a hospital in Maryville, and the County later sponsored that application in 1942 and assumed the responsibility for the construction of the hospital. The FWA questioned whether the County was authorized to issue bonds for the matching funds it required, and to provide funding, the FWA requested that "Blount County [] secure the enactment of a special authorization act" to receive the funding. *See* FWA Letters dated April 20, 1942 and January 4, 1945 attached hereto as **Exhibit 2** and **3**, respectively.

10.　　According to a letter from County Judge George D. Roberts to Joe C. Gamble, the County was to present a private act to the County's state representative and senator for enactment by the Tennessee General Assembly in order to receive the grant from the FWA. *See* County Judge Roberts' Letter dated January 8, 1945 attached hereto as **Exhibit 4**.

11.　　The County and the Hospital Committee's involvement was solely for the purpose of obtaining funds to acquire a site and construct a hospital. Neither the County nor the Hospital Committee ever intended for the County to own, operate, or maintain the hospital once it was constructed and an operating corporation was formed. In fact, County Judge Roberts stated this in his January 8, 1945 Letter to Attorney Gamble, writing:

> I know it is the idea of the committee to *not* have the County issue bonds or to own and operate the hospital, but it may be necessary for us to have it in the name of the County *until an operating company is organized*. The Act should be broad enough to allow the County, if necessary, to purchase and pay for the necessary site.

*See* **Exhibit 4** (emphases added).

4

12.     The County's state representative and senator presented the County's private act to the Tennessee General Assembly in 1945, and on February 9, 1945, Chapter 187 of the 1945 Private Acts of the State of Tennessee was enacted (the "1945 Private Act"). *See* the 1945 Private Act attached hereto as **Exhibit 5**.

13.     Pursuant to County Judge Roberts' direction, the 1945 Private Act was drafted broadly to satisfy the FWA's request. Under the 1945 Private Act, Blount County was

> . . . authorized and empowered to build, purchase, and own and/or operate and maintain a non-profit general hospital in said County, acting by and through its Quarterly County Court, with authority to either accept the legal title to such hospital to be operated by some non-profit corporation, organized for such purpose, or to own such hospital and turn over the maintenance and operation thereof to such non-profit corporation, or to own, maintain and operate such hospital under the supervision of said Quarterly County Court.

*See* **Exhibit 5**.

14.     The Hospital Committee notified the FWA of the enactment of the 1945 Private Act and accepted the FWA's grant of $201,500.00. *See* the Hospital Committee's Letter to the FWA dated February 27, 1945, the FWA's Letter dated April 28, 1945, and the County Judge's Letter dated May 28, 1945, all attached as **Exhibits 6, 7, and 8**, respectively.

15.     The estimated cost of acquiring a site and constructing a hospital was $403,000; half of this was funded by the FWA's grant of $201,500, and the other half through contributions from ALCOA, Inc., its employees, Blount County businesses, and other various private citizens of Blount County. *See* **Exhibit 7**.

16.     In June 1945, George and Jeness Hussey of North Carolina conveyed land to the County for "hospital and nurses' home purposes." *See* June 4, 1945 Warranty Deed from the Husseys to the County attached hereto as **Exhibit 9**. In September 1945, Maryville College granted land for the site of the construction of the original Blount Memorial hospital facility. *See*

September 1945 Warranty Deed from Maryville College to the County attached hereto as **Exhibit 10**. Also in September 1945, County Judge Roberts received bids from contractors for the construction of the original Blount Memorial hospital facility. *See* County Judge Roberts' Letter to the FWA Dated October 12, 1945 attached hereto as **Exhibit 11**.

17.     On December 20, 1945, the City of Alcoa passed a resolution appropriating up to $2,000 annually for a period of five (5) years to defray any operating losses regarding the operation and maintenance of the hospital. *See* City of Alcoa Resolution No. 442 attached hereto as **Exhibit 12**. On December 21, 1945, the City of Maryville passed virtually the same resolution. *See* City of Maryville Resolution No. 111 attached hereto as **Exhibit 13**. On January 7, 1946, the County Commission passed a resolution appropriating up to $12,000 annually for a period of five (5) years to defray operating losses regarding the operation and maintenance of the hospital. *See* January 7, 1946 Commission Resolution attached hereto as **Exhibit 14**. There is no record of Blount Memorial's receipt of funds appropriated by the County or the Cities of Alcoa and Maryville.

18.     Blount Memorial was incorporated upon the filing of its Charter of Incorporation ("Charter") with the Tennessee Secretary of State on January 22, 1946, and operates in accordance with the Tennessee Nonprofit Corporation Act. *See* Blount Memorial's Charter attached hereto as **Exhibit 15**; *see also* Tenn. Code Ann. § 48-68-101. Pursuant to the Charter, the County, the Cities of Alcoa and Maryville, and Maryville College have the limited power to appoint members to Blount Memorial's Board of Directors, but Blount Memorial is not owned by either of these governmental entities or Maryville College. Instead, Blount Memorial was created and incorporated for the "general welfare of society," and "neither the directors nor the agencies [the County, the Cities of Alcoa and Maryville, and Maryville College] selecting them are stockholders

6

in the legal sense of the term, and no dividends or profits shall be divided among them." *See*
**Exhibit 15**.

19.     On July 7, 1947, the County Commission passed a resolution (the "1947 Hospital
Resolution"), declaring that "[i]t is not the intention of Blount County to operate said hospital but
to lease the same to an operating corporation," referencing a lease for "the rental of One ($1.00)
Dollar per year for a period of five years." *See* the 1947 Hospital Resolution attached hereto as
**Exhibit 16**. The 1947 Hospital Resolution further stated that "through the County Court and other
agencies in Blount County, a non-profit corporation has been formed . . . known as Blount
Memorial Hospital, Incorporated," and "[t]hat Blount County transfer to said Blount Memorial
Hospital, Inc., [] equipment when and as it is purchased." *See* **Exhibit 16**.

### b.     Blount Memorial's Purposes, Powers, and Operation

20.     The Charter provides that Blount Memorial was created and incorporated "for the
purpose of leasing, operating and/or maintaining a general non-profit hospital to be operated in
Blount County, Tennessee." *See* **Exhibit 15**.

21.     The Charter provides that Blount Memorial has the power "to purchase and hold or
receive by gift, bequest or devise, personal property and real estate, and also to accept any real
estate or personal property in payment or in part payment of any debt due to the corporation and
sell the same . . . ." *See* **Exhibit 15**. Pursuant to the Tennessee Nonprofit Corporation Act, Blount
Memorial possesses the express power to own real and personal property. *See* Tenn. Code Ann. §
48-53-102.

22.     Blount Memorial is a "private act hospital authority," as provided in Tennessee law,
and, as such, possesses the powers granted to "private act metropolitan hospital authorities,"
including the power to "sell, exchange, transfer, assign, or pledge any real property, or any interest

in real property to any person, firm, corporation, municipality, city, or government," with or without the approval of the County Commission. *See* Tenn. Code Ann. §§ 7-57-304, -602, and -603; *see also* Tenn. Att'y Gen. Op. No. 08-197 (2008) attached hereto as **Exhibit 17**.

23.     From its founding, Blount Memorial Hospital has been operated and maintained solely by Blount Memorial as a Tennessee nonprofit corporation through Blount Memorial's Board of Directors in accordance with its purposes, powers, and the standards of conduct imposed by law without the direct influence or control of the County.

24.     Prior to November 21, 2022, Blount County had never claimed that Blount Memorial could not buy, sell, or own property, or that Blount County's approval was needed beforehand to do so. In addition to acknowledging that Blount Memorial owns assets and property in the In Lieu of Tax Agreements (referenced below), County Mayor Ed Mitchell previously acknowledged that "we [the County] don't own the hospital." *See* Minutes of the Blount County Commission's Ad Hoc Committee to Study Lost Tax Revenues dated August 23, 2011, attached hereto as **Exhibit 18**.

**c.     Blount Memorial's Ownership of Associated and Related Programs, Facilities, and Property**

25.     In 1993, Blount Memorial wanted to expand from its original hospital facility into health care areas in Blount County that had previously been provided by private entities. Accordingly, Blount Memorial's Charter was amended to be "for the purpose of leasing, operating and/or maintaining a general non-profit hospital and associated and related programs and facilities." *See* 1993 Amendment attached hereto as **Exhibit 19**.

26.     Subsequent to and in accordance with the 1993 Charter amendment, Blount Memorial began purchasing real properties in Blount and Monroe Counties to own, operate, and

maintain other "associated and related programs and facilities" ancillary to the original hospital facility.

27.     These properties were titled solely in the name of Blount Memorial and are used to provide health care services ancillary to those being provided at the original hospital facility (*e.g.*, nursing home and assisted living facilities, home health care facilities, outpatient clinics and physician offices, and community health centers).  These facilities do not possess hospital licenses from the State of Tennessee.  *See* Forty-six (46) Properties titled solely in the name of Blount Memorial according to Tennessee Property Assessment Data's website for Blount and Monroe Counties attached hereto as **Exhibit 20**.

28.     On the other hand, the 1945 Private Act was not amended to grant the County the authority to own anything other than a "general hospital"—*i.e.*, the original hospital facility.  *See* **Exhibit 5**; *see also* Tenn. Att'y Gen. Op. No. 82-278 (1982) attached hereto as **Exhibit 21**.

29.     Blount Memorial was and is exempt from the payment of any taxes to the County on these real properties.  *See* Tenn. Code Ann. § 7-57-307.  Nevertheless, since 2001 Blount Memorial has entered into agreements the County and the Cities of Alcoa and Maryville to make in lieu of property tax payments to the County and the cities "for real and personal property *owned by* [Blount Memorial]."  *See* the In Lieu of Tax Agreements between Blount Memorial, the County, and the Cities of Alcoa and Maryville attached hereto as **Exhibit 22** (emphasis added).

30.     The real properties are solely owned by Blount Memorial.  The real properties are titled solely in the name of Blount Memorial and were purchased with the funds and revenues of Blount Memorial.  *See* Tenn. Code Ann. §§ 66-26-101 and -102 (generally establishing the effectiveness of Blount Memorial's deeds); *see also* Tenn. Code Ann. § 28-2-109 (establishing that Blount Memorial is presumed prima facie to own the real properties recorded solely in its

9

name with the Blount County Register of Deeds and on which it has made tax payments for a period of more than twenty (20) years). While the County has made two (2) conduit bond issues on behalf of Blount Memorial in 2013 and 2019, the bond debts were secured solely by the revenues of Blount Memorial, and the County does not provide any funds, revenues, tax dollars, or other monies to Blount Memorial for the maintenance, upkeep, and operation of Blount Memorial or its real properties.

31.     Additionally, pursuant to the 1947 Hospital Resolution and in accordance with its Charter, Blount Memorial owns intangible assets and extensive personal property, including for example, health care assets and equipment, vehicles, furniture, investments, cash, and various contract rights.

### d.     The Bond Debt and the Proposed Transaction

32.     In March 2020, the COVID-19 pandemic spread across the United States, causing hundreds of thousands of deaths and millions to suffer from symptoms concomitant with the COVID-19 virus. As a result, the COVID-19 pandemic placed an unprecedented strain on health care facilities throughout the United States and the State of Tennessee.

33.     Blount Memorial was not immune from the effects of the COVID-19 pandemic. Due to financial difficulties resulting from the pandemic and other conditions affecting government payor sources, such as a reduction in Medicare reimbursement, beginning in early 2022, Blount Memorial began having concerns as to whether its cash reserves would be sufficient to comply with its outstanding 2019 bond debt covenants.

34.     To alleviate these financial struggles, Blount Memorial's Board of Directors sought new leadership, electing G. Harold Naramore, M.D. ("Dr. Naramore"), as Chief Executive Officer of Blount Memorial in July 2022. Dr. Naramore and Blount Memorial leadership immediately

10

began considering its options to generate an immediate cash infusion for Blount Memorial to meet its cash needs, including the satisfaction of its bond debt covenants.

35.     In October 2022, Blount Memorial duly authorized and announced a plan to sell its Springbrook Facility[3] for $22.2 million to generate an immediate cash infusion and relieve its current financial strain (the "Proposed Transaction").

### e.     The County Mayor's Letter

36.     Without consulting Dr. Naramore or Blount Memorial's Board of Directors, on November 21, 2022, County Mayor Ed Mitchell sent a letter (the "County Mayor's Letter") to Blount Memorial's Board of Directors threatening to thwart the Proposed Transaction and otherwise attempting to exert political influence over Blount Memorial's continued provision of health care services to the citizens of Blount County, Tennessee. *See* the County Mayor's Letter attached hereto as **Exhibit 23**.

37.     The County Mayor's Letter contained many inaccuracies regarding Blount Memorial and the relationship between it and Blount County, including the false assertion that all of Blount Memorial's assets are owned by the County and that the Springbrook Facility "was purchased with County revenues." *See* **Exhibit 23**.

38.     The County Mayor's Letter and his claim of Blount County's ownership of all of Blount Memorial's assets caused the sale of the Springbrook Facility to be delayed and eventually canceled, preventing Blount Memorial from accessing the cash necessary to meet its cash needs, including sufficient funds to satisfy its bond debt covenants.

---

[3] The Springbrook Facility is owned by Blount Memorial and is included among the properties listed in **Exhibit 20**. Blount Memorial makes in lieu of property tax payments to the City of Alcoa and Blount County for the Springbrook Facility, as reflected in **Exhibit 22**.

### f.    The State Court Action

39.    After attempts to communicate with the County Mayor had failed, and, in an effort to ensure that the Proposed Transaction would go forward on December 21, 2022, Blount Memorial filed an action for declaratory judgment and injunctive relief, pursuant to the Tennessee Declaratory Judgment Act and Tennessee Rule of Civil Procedure 65, against the County and the County Mayor in the Blount County Chancery Court, Docket No. 2022-CH-114 (the "State Court Action"). *See* Blount Memorial's Verified Complaint attached hereto as **Exhibit 24**.

40.    As a part of the State Court Action, Blount Memorial moved the Chancery Court for a temporary injunction preventing the County from interfering with the sale of the Springbrook Facility. A hearing was never held on Blount Memorial's motion for temporary injunction and Blount Memorial eventually withdrew the motion and amended its complaint.

41.    Among other things, Blount Memorial's amended complaint asked the Chancery Court to "declare that Blount Memorial is the sole owner of, and that Blount County has no ownership interest in, all real properties titled solely in the name of Blount Memorial and which are not a part of the 'general nonprofit hospital . . . .'" *See* Blount Memorial's Amended Complaint attached hereto as **Exhibit 25.**

42.    On or about February 7, 2023, the County filed an answer and counterclaim against Blount Memorial pursuant to the Tennessee Declaratory Judgment Act, asking the Chancery Court to declare that the County "is the owner of Blount Memorial Hospital and all assets of the hospital, including all of its associated and related programs and facilities," and that any property (real or personal) owned by Blount Memorial is held "in trust for and on behalf of" the County.[4] *See* the County's Amended Counterclaim attached hereto as **Exhibit 26**.

---

[4] The County also brought causes of action against Blount Memorial relating to the Tennessee Open Meetings Act and Blount Memorial's Board of Directors that are not pertinent to this action.

43.     The State Court Action is still pending, and, as of this date, Blount Memorial and the County are currently engaged in the discovery stages of that action.

### g.     The New Private Act

44.     While the State Court Action was pending, the County drafted proposed legislation for submission to the Blount County legislative delegation for introduction in the Tennessee General Assembly (the "New Private Act"). The apparent purpose of the proposed legislation was to circumvent the State Court Action, pretermit Blount Memorial's claims of ownership, and transfer the operation and maintenance of the hospital to the University of Tennessee Medical Center. *See* Resolution No. 23-02-015 attached hereto as **Exhibit 27**; Resolution No. 23-03-014 attached hereto as **Exhibit 28**.

45.     On February 16, 2023, the County Commission passed Resolution 23-02-015, requesting the Blount County legislative delegation file the New Private Act for introduction in the Tennessee General Assembly. *See* **Exhibit 27**.

46.     On March 13, 2023, the New Private Act was filed for introduction in both the Tennessee House of Representatives and the Tennessee Senate as House Bill 1560 ("HB 1560"), and Senate Bill 1548 ("SB 1548"), respectively. *See* the Tennessee General Assembly's website information on HB 1560 and SB 1548 attached hereto as **Exhibit 29**.

47.     The Tennessee House of Representatives passed HB 1560 on April 10, 2023. After substituting HB 1560 for SB 1548 and adopting an amendment[5] to the bill, the Tennessee Senate passed HB 1560 on April 18, 2023. The Tennessee House of Representatives concurred in the amendment and passed HB 1560 as amended, the next day. *See* **Exhibit 29**.

---

[5] The amendment to House Bill 1560 added new subsection (g), which requires the hospital to always be designated as "Blount Memorial Hospital," regardless of its ownership or management.

13

48.     While the New Private Act was working its way through the General Assembly and up until Governor Lee signed it, Blount Memorial and its counsel attempted to pursue every opportunity to alert the appropriate state officials of serious constitutional, statutory, and logistical concerns regarding the New Private Act.  For example, Blount Memorial and its counsel testified against the New Private Act at the Tennessee House and Local Government Committee meeting on March 28, 2023.  *See* Video of Tennessee House and Local Government Committee's Mar. 28, 2023 meeting at https://tnga.granicus.com/player/clip/28161?view_id=703&redirect=true&h=7f1 3d3c2f139a8b3c3279991cb02f7f3.  Additionally, Blount Memorial's counsel wrote letters with an enclosed memorandum on the New Private Act to the House and Local Government Committee, the Attorney General, the Speakers of the House and Senate, and even Governor Lee.  In the end, these efforts amounted to shouting in the dark, and Blount Memorial was virtually ignored at every turn.

49.     On May 11, 2023, Governor Bill Lee signed the New Private Act.  Pursuant to Tenn. Code Ann. §§ 8-3-201 to -205, the New Private Act was transmitted back to the County requiring a two-thirds (2/3) majority approval of the County Commission to take effect.  *See* the New Private Act attached hereto as **Exhibit 30**.

50.     On May 18, 2023, the County Commission adopted Resolution No. 23-05-013 approving the New Private Act.  Pursuant to the terms of Resolution 23-05-013, the New Private Act became effective upon its approval by the County Commission.  *See* Resolution 23-05-013 attached hereto as **Exhibit 31**.

51.     According to the New Private Act, the County is deemed to be the "owner of any assets of the hospital, and any assets of the hospital held by [Blount Memorial] shall be held in trust for the benefit of the County."  *See* **Exhibit 30**.

14

52.     Additionally, the County was given the authority to terminate its relationship with Blount Memorial and, "upon such termination, [Blount Memorial] shall convey and/or transfer all assets of the hospital that are held by [Blount Memorial] to the County." *See* **Exhibit 30**.

### h.     The County's Request for Proposals

53.     On June 1, 2023, the County issued its Request for Proposal No. 2023-0218, which purports to seek

> . . . an independent healthcare consultant to evaluate and advise the County regarding the feasibility of remaining an independent hospital, the available strategic alternatives if an affiliation with a larger health system is deemed appropriate, assistance with seeking and evaluating formal proposals for strategic alliances with non-profit health systems in the area and assistance in consummating a strategic alliance if determined to be appropriate.

*See* the County's Request for Proposal No. 2023-0218 attached hereto as **Exhibit 32**.

54.     Since February 15, 2023, the County has aggressively sought to terminate its seventy-five (75) year relationship with Blount Memorial and engage the University of Tennessee Medical Center as the new "operator" of the hospital. *See* County Mayor Ed Mitchell's Press Release Dated February 15, 2023, announcing his intent to begin negotiations with the University of Tennessee Medical Center attached hereto as **Exhibit 33**; *see also* **Exhibit 28** (wherein the County Commission authorized the County Mayor to begin negotiations with the University of Tennessee Medical Center).

55.     The County intends to use its Request for Proposal No. 2023-0218 to obtain and legitimize an affiliation with a larger health system, terminate its relationship with Blount Memorial, and appropriate Blount Memorial's property.

56.     Blount Memorial has already suffered injury in fact from the County's enactment of the New Private Act because it purports to divest Blount Memorial of all of its property of

15

whatever nature, including its real property and personal property such as health care assets and equipment, furniture, vehicles, cash, investments, and various contract rights.

57.     Further injury in fact is impending because the County is threatening to terminate its seventy-five (75) year relationship with Blount Memorial, thereby interfering with its existing contracts.

## CAUSES OF ACTION

### COUNT I
### Declaratory Judgment pursuant to 28 U.S.C. § 2201

58.     Plaintiff hereby incorporates all foregoing Paragraphs as if fully restated herein verbatim.

59.     Pursuant to 28 U.S.C. § 2201, Blount Memorial is entitled to the following declarations as an "interested party":

### U.S. Const. amend V—The Federal Takings Clause

60.     The Takings Clause in the Fifth Amendment to the United States Constitution provides that "nor shall private[6] property be taken for public use, without just compensation." U.S. Const. amend V.

61.     As set forth above, Blount Memorial owns the real properties titled solely in its name and which are not part of the original hospital facility.  Further, Blount Memorial owns intangible assets and extensive personal property, including for example, health care assets and equipment, vehicles, furniture, investments, cash, and other contract rights.

---

[6] Federal courts have held that "[t]he reference to private property in the takings clause encompasses property of state and local governments because the loss of a public facility may be 'no less acute than the loss in a taking of private property.'" *Bd. of Cty. Supervisors v. United States*, 23 Cl. Ct. 205, 208 (Fed. Cl. 1991) (citing *United States v. 50 Acres of Land*, 469 U.S. 24 (1984)).

16

62.     Under the provisions of the New Private Act, the County is deemed to be the "owner of any assets of the hospital, and any assets of the hospital held by [Blount Memorial] shall be held in trust for the benefit of the County." *See* **Exhibit 30**.  Thus, the New Private Act, by its terms, divests Blount Memorial of <u>all</u> of its property and assets and declares the County as the owner of all of Blount Memorial's property contrary to Blount Memorial's Charter and Tennessee law.

63.     Under the terms of the New Private Act, the County is the owner of all of Blount Memorial's assets and property, as specified above, by legislative fiat and without just compensation.

64.     Blount Memorial is entitled to a declaration that the New Private Act violates the Takings Clause in the Fifth Amendment to the United States Constitution.

## U.S. Const. amend XIV—The Due Process Clause

65.     The Due Process Clause of the Fourteenth Amendment to the United States Constitution provides: "nor shall any State deprive any person of life, liberty, or property, without due process of law . . . ." U.S. Const. amend XIV.

66.     Blount Memorial is a "person" under the Fourteenth Amendment.  *See Kentucky Finance Corp. v. Paramount Auto Exchange Corp.*, 262 U.S. 544, 550, 43 S. Ct. 636, 638, 67 L. Ed. 1112, 1115 (1923).

67.     Blount Memorial owns the real properties titled solely in its name and which are not part of the original hospital facility.  Blount Memorial also owns intangible assets and extensive personal property, including for example, health care assets and equipment, vehicles, furniture, investments, cash, and other contract rights.

68.     Under the provisions of the New Private Act, the County is deemed to be the "owner of any assets of the hospital, and any assets of the hospital held by [Blount Memorial] shall be held

in trust for the benefit of the County." *See* **Exhibit 30**. Thus, the New Private Act purports to <u>deprive</u> Blount Memorial of all of its property and assets and declare the County as the true owner thereof.

69.     The County drafted and submitted the New Private Act to the County's legislative delegation without any input from, notice to, or cooperation with Blount Memorial. The New Private Act was rushed through the Tennessee General Assembly within a month of its introduction without Blount Memorial having a meaningful opportunity to comment thereon.

70.     The County procured the enactment of the New Private Act for the purpose of circumventing the State Court Action and has no rational basis for the New Private Act.

71.     Blount Memorial is entitled to a declaration that the New Private Act violates Blount Memorial's Fourteenth Amendment procedural due process rights.

72.     Blount Memorial is entitled to a declaration that the New Private Act violates Blount Memorial's Fourteenth Amendment substantive due process rights.

### U.S. Const. Article I, § 10—The Contracts Clause

73.      Pursuant to Article I, section 10 of the United States Constitution, "[n]o State shall . . . pass any . . . law impairing the Obligation of Contracts." U.S. Const. art. I, § 10.

74.     As a health care provider, Blount Memorial has various existing contracts with entities such as Medicare, TennCare, private insurance companies, for profit and nonprofit health and service organizations, various vendors and even with its physicians, administrators, employees, and other staff.

75.     The New Private Act purports to grant the County the power to terminate its relationship with Blount Memorial and, "upon such termination, [Blount Memorial] shall convey

18

and/or transfer all assets of the hospital that are held by [Blount Memorial] to the County." *See* **Exhibit 30**.

76.    The County has issued its Request for Proposal No. 2023-0218 to seek "the available strategic alternatives if an affiliation with a larger health system is deemed appropriate, assistance with seeking and evaluating formal proposals for strategic alliances with non-profit health systems in the area and assistance in consummating a strategic alliance if determined to be appropriate," and terminate its relationship with Blount Memorial. *See* **Exhibit 32**.    Upon information and belief, the County is currently reviewing the requested proposals and plans to conduct interviews with consultants regarding its relationship with Blount Memorial and its status as the operator of the hospital, and the County's enforcement of the New Private Act to terminate its relationship with Blount Memorial is impending.

77.    The New Private Act and the County's termination of its relationship with Blount Memorial will substantially impair Blount Memorial's existing contracts because it wholly divests Blount Memorial of its assets, properties, revenues, and management of the hospital, preventing Blount Memorial from rendering performance thereunder.

78.    The County procured the enactment of the New Private Act for the purpose of circumventing the State Court Action, and the New Private Act has no significant and legitimate public purpose or reasonable conditions behind the New Private Act.

### Article I, § 21 of the Tennessee Constitution—The Tennessee Takings Clause

79.    Article I, Section 21 of the Tennessee Constitution provides that "[n]o man's particular services shall be demanded, or property taken, or applied to public use, without the consent of his representatives, or without just compensation being made therefor."  Tenn. Const. art. I, § 21.

19

80.     Blount Memorial owns the real properties titled solely in its name and which are not part of the original hospital facility.  Further, Blount Memorial owns extensive personal property, including for example, health care assets and equipment, vehicles, furniture, investments, cash, and other contract rights.

81.     Under the provisions of the New Private Act, the County is deemed to be the "owner of any assets of the hospital, and any assets of the hospital held by [Blount Memorial] shall be held in trust for the benefit of the County."  *See* **Exhibit 30**.  Thus, the New Private Act purports to divest Blount Memorial of <u>all</u> of its property and assets and declare the County as the true owner thereof contrary to Blount Memorial's Charter and Tennessee law.  The New Private Act effects an inverse condemnation of all of Blount Memorial's property.

82.     The County has paid <u>no</u> compensation to Blount Memorial for its real and personal property.

83.     Blount Memorial is entitled to a declaration that the New Private Act violates the Takings Clause in Article I, Section 21 of the Constitution of the State of Tennessee.

### Article XI, § 8 of the Tennessee Constitution

84.     Pursuant to Article XI, section 8 of the Tennessee Constitution:

The Legislature shall have no power to suspend any general law for the benefit of any particular individual, nor to pass any law for the benefit of individuals inconsistent with the general laws of the land; nor to pass any law granting to any individual or individuals, rights, privileges, immunitie, or exemptions other than such as may be, by the same law extended to any member of the community, who may be able to bring himself within the provisions of such law.  *No corporation shall be created or its powers increased or diminished by special laws but the General Assembly shall provide by general laws for the organization of all corporations, hereafter created, which laws may, at any time, be altered or repealed and no such alteration or repeal shall interfere with or divest rights which have become vested.*

Tenn. Const. art. XI, § 8.

85.     The New Private Act is a "special law" because it is a private act of the General Assembly applicable only to the County and specifically concerns Blount Memorial and no other person, corporation, or other entity.

86.     The New Private Act purports to diminish by special law the power of Blount Memorial to own real and personal property contrary to Blount Memorial's Charter and the general laws of the State of Tennessee.

87.     The New Private Act purports to interfere with and divest Blount Memorial of its real and personal property contrary to Blount Memorial's Charter and the general laws of the State of Tennessee.

88.     The County procured the enactment of the New Private Act for the purpose of circumventing the State Court Action and has no rational basis for the New Private Act.

89.     Blount Memorial is entitled to a declaration that the New Private Act violates Article XI, section 8 of the Tennessee Constitution.

## COUNT II
### Injunctive Relief pursuant to Federal Rule of Civil Procedure 65

90.     Blount Memorial hereby incorporates all foregoing Paragraphs as if fully restated herein verbatim.

91.     Pursuant to Federal Rule of Civil Procedure 65, Blount Memorial is entitled to injunctive relief enjoining and restraining the New Private Act from taking effect, enjoining and restraining the County and the Attorney General, including their agents, employees, attorneys, and all other persons or entities acting or claiming to act in concert with or on their behalf, from in any way enforcing the New Private Act, including restraining the County from taking further action regarding its Request for Proposal No. 2023-0218 or any other request for proposal regarding

21

Blount Memorial's status as the operator of the hospital while the Court considers the constitutionality of the New Private Act.

92.     As shown by this Verified Complaint and the exhibits attached hereto, there is a substantial likelihood of success on the merits with regard to the averments contained herein, and the New Private Act will, unless enjoined and restrained from taking effect by Order of this Court, violate Blount Memorial's rights and cause immediate and irreparable injury, loss, and damage to Blount Memorial, for which it has no adequate remedy at law.  *See Friedmann v. Parker*, 573 F. Supp. 3d 1221, 1223 (M.D. Tenn. 2021) ("[t]he 'loss of constitutional rights is presumed to constitute irreparable harm'") (citing *Doe by & through Frazier v. Hommrich*, No. 3-16-0799, 2017 U.S. Dist. LEXIS 42290, 2017 WL 1091864, at *2 (M.D. Tenn. Mar. 22, 2017; *Overstreet v. Lexington-Fayette Urban Cty. Gov't*, 305 F.3d 566, 578 (6th Cir. 2002)).

93.     The issuance of a preliminary injunction will not cause substantial harm to the Defendants but will advance the public interest.

94.     Due to the impending threat that the County will use the New Private Act to take further action to terminate its relationship with Blount Memorial and substantially impair Blount Memorial's existing contracts, leaving it without an adequate remedy at law, a Preliminary Injunction should be granted to prevent irreparable harm and maintain the *status quo* while the Court considers the constitutionality of the New Private Act.  *See United Farm Workers Union*, 442 U.S. 289, 298, 99 S. Ct. 2301, 60 L. Ed. 2d 895 (1979) (stating that "an individual does not have to await the consummation of threatened injury to obtain preventive relief"); *NRA of Am. v. Magaw*, 132 F.3d 272, 279 (6th Cir. 1997) (stating that "a citizen should be allowed to prefer official adjudication to public disobedience").

## PRAYER FOR RELIEF

**WHEREFORE**, premises considered, Blount Memorial respectfully prays for the following relief:

A.      Proper process issue and be served upon the Defendants requiring it to answer this Verified Complaint;

B.      Pursuant to Rule 57 of the Federal Rules of Civil Procedure, the Court order a speedy hearing of this action for declaratory judgment and advance it on the calendar;

C.      The Court declare that the New Private Act violates the Takings Clause of the Fifth Amendment to the United States Constitution;

D.      The Court declare that the New Private Act violates both the substantive and procedural components of the Due Process Clause of the Fourteenth Amendment to the United States Constitution;

E.      The Court declare that the New Private Act violates the Contracts Clause of Article I, § 10 of the United States Constitution;

F.      The Court declare that the New Private Act violates Article I, § 21 of the Tennessee Constitution;

G.      The Court declare that the New Private Act violates Article XI, § 8 of the Tennessee Constitution;

H.      The Court set a hearing date for Plaintiff's Motion for Preliminary Injunction filed herewith and grant a Preliminary Injunction as prayed for herein and, upon a final hearing, convert the same to a Permanent Injunction;

I.      Blount Memorial be granted its attorneys' fees and the costs of this suit;

23

J.      Blount Memorial be granted such other, further, and general relief as this Court may deem just and proper; and

K.      All costs be assessed against the County and/or the Attorney General.

**THIS IS THE FIRST APPLICATION FOR EXTRAORDINARY RELIEF IN THIS CAUSE.**

Respectfully submitted this the 28th day of June, 2023.


J. Douglas Overbey, BPR No. 006711
John E. Owings, BPR No. 013373
Gavin A. Smelcer, BPR No. 039202
OWINGS, WILSON & COLEMAN
900. S. Gay St., Suite 800
Knoxville, TN 37902
P: 865.521.3013
F: 865.522.7929
jdoverbey@owclaw.com
jeowings@owclaw.com
gsmelcer@owclaw.com

*Counsel for Plaintiff*

24

## VERIFICATION

STATE OF TENNESSEE   )
COUNTY OF BLOUNT     )

      Comes G. Harold Naramore, M.D., who, upon oath, acknowledged himself to be the Chief Executive Officer of **BLOUNT MEMORIAL HOSPITAL, INC.**, and who, after being duly sworn according to law, as such Chief Executive Officer, being duly authorized to do so, makes oath that the statements in the foregoing Verified Complaint are true to the best of his knowledge, information and belief; that the Verified Complaint is made in sincerity and truth for the causes mentioned in said Verified Complaint; and that **BLOUNT MEMORIAL HOSPITAL, INC.** is justly entitled to the redress sought by said action to the best of his belief.

_____, M.D.
G. Harold Naramore, M.D.

      Sworn and subscribed before me this the 28th day of June, 2023.

_____
Notary Public
My Commission Expires: March 25, 2025

25